UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**ADIENT US LLC**, *a Michigan limited liability company*, **ADIENT US ENTERPRISES LP**, *a limited partnership*, **CNI ENTERPRISES, INC.**, *a Michigan corporation*,

    Plaintiffs,

vs.

**UNIROYAL GLOBAL ENGINEERED PRODUCTS, INC.**, *a Nevada corporation*, and **UNIROYAL ENGINEERED PRODUCTS, LLC**, *a Delaware limited liability company*,

    Defendant.

Case No. 2025-cv-_____
Hon.

**HICKEY HAUCK BISHOFF JEFFERS**
   **& SEABOLT, PLLC**
**Benjamin Shipper (P77558)**
1 Woodward Avenue, Suite 2000
Detroit, MI, 48226
(313) 964-8600
bshipper@hhbjs.com
*Attorneys for Plaintiffs*

**COMPLAINT FOR MONETARY,
DECLARATORY, AND OTHER RELIEF**

Plaintiffs Adient US LLC ("Adient LLC"), Adient US Enterprises LP ("Adient LP"), and CNI Enterprises Inc. ("CNI") (collectively, "Plaintiffs" or "Adient"), by and through their attorneys, Hickey Hauck Bishoff Jeffers & Seabolt,

PLLC, state for their Complaint for Monetary, Declaratory, and Other Relief against Defendant Uniroyal Global Engineered Products, Inc. ("UGEP") and Uniroyal Engineered Products, LLC ("UEP") (collectively, "Defendants" or "Uniroyal") as follows:

## NATURE OF THE CASE

1. Plaintiffs are designers and manufacturers of automotive seating systems, primarily for sale to automotive original equipment manufacturers ("OEMs"). Defendants are suppliers of automotive vinyl products used in Plaintiffs' automotive seating applications. Plaintiffs bring this action for breach of contract and declaratory relief as a result of Defendants' unlawful, unilateral demand for significant price increases on their products coupled with Defendants' threats and refusal to continue manufacturing and/or shipping their products to Plaintiffs in violation of the parties' requirements contract. Had Plaintiffs not complied with Defendants' unlawful demands, it would have resulted in a near-immediate shutdown of production operations for one of Plaintiffs' OEM customers. Plaintiffs now bring this action to recover damages arising from Defendants' breach of the parties' contract and for a declaration from this Court that Defendants, whose production obligations to Plaintiffs have concluded, must continue to supply service level quantities of products, if any, at the contracted-for prices for the remaining service life of the applicable automotive programs.

## PARTIES AND JURISDICTION

2. Plaintiff **Adient LLC** is a Michigan limited liability company with its principal place of business in Plymouth, Wayne County, Michigan. Adient LLC is wholly owned by Adient PLC, an Irish public limited company (the functional equivalent of a domestic corporation), with its principal place of business in Plymouth, Wayne County, Michigan.

3. Plaintiff **Adient LP** is a limited partnership with its principal place of business in Plymouth, Wayne County, Michigan. Adient LP's General Partner is Adient Global Holdings Ltd., a Jersey public limited company (the functional equivalent of a domestic corporation), with its principal place of business in Plymouth, Wayne County, Michigan. Adient LP's Limited Partner is Adient Ltd., an English private limited company (the functional equivalent of a domestic corporation), with its principal place of business in Coventry, England.

4. Plaintiff **CNI** is a Michigan corporation with its principal place of business in Plymouth, Wayne County, Michigan.

5. Defendant **UGEP** is a Nevada corporation with its principal place of business in Sarasota, Florida.

6. Defendant **UEP** is a Delaware limited liability company with its principal place of business in Sarasota, Florida. UEP is wholly owned by UGEP, with its principal place of business in Sarasota, Florida.

3

7. Defendants conduct systematic and continuous business and/or have a place of business in this District in Farmington Hills, Oakland County, Michigan.

8. This Court has jurisdiction over this action under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, and there is complete diversity of citizenship between the parties: Plaintiffs are citizens of Michigan, Ireland, Jersey and/or England; Defendants are citizens of Delaware, Nevada and/or Florida.

9. This Court has personal jurisdiction over Defendants because, among other things, Defendants transacted business, and acted and caused consequences of acts to occur, in Michigan.

10. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District. Additionally, in their contract, the parties agreed to the exclusive jurisdiction of the appropriate State and Federal courts in Michigan, including in any court having jurisdiction over Defendants.

## GENERAL ALLEGATIONS

### The Parties' Contractual Relationship

11. Plaintiffs are automotive suppliers that design, develop, and manufacture automotive seating systems, assemblies, modules, and components, primarily for sale to OEMs.

12. Defendants are suppliers of vinyl-coated fabrics and soft trim products.

13. Before 2016, Plaintiffs were part of Johnson Controls' automotive seating business.

14. Beginning in 2014, Johnson Controls, for itself and the benefit of its affiliates, sent a letter to Defendants offering Defendants the opportunity to be Johnson Controls' sole source supplier for Johnson Controls' production and service life requirements of certain vinyl automotive seating system components, which requirements were set by one of Johnson Controls' OEM customers (the "Award Letter"). **Exhibit 1**.

15. The Award Letter confirmed that Defendants would supply the components at fixed prices for the length of the applicable vehicle program(s) beginning with the 2016 model year. *Id.*

16. Johnson Controls' offer of the supply relationship referenced in the Award Letter was expressly conditioned upon Defendants' acceptance of Johnson Controls' Terms and Conditions of Purchase. *Id.*

17. Defendants, through their Executive Vice President and General Manager, Lawrence Bressler, accepted the Award Letter by signing and returning it to Johnson Controls on or about May 5, 2014. *Id.*

18. On October 31, 2016, Johnson Controls spun-off its automotive seating business, to Adient PLC and its affiliates, including Plaintiffs.

19. As part of that spin-off, Johnson Controls assigned Plaintiffs its contractual relationship with Defendants governed by the Award Letter, its Terms and Conditions of Purchase, the purchase orders that Johnson Controls had issued, and material releases to-date.

20. After the spin-off, Plaintiffs continued to issue purchase orders (the "Orders") and material releases ("Releases") to Defendants for the vinyl automotive seating system components and/or products (collectively, the "Supplies") that Defendants had been supplying to Johnson Controls. These Orders explicitly incorporated by reference Adient's Terms and Conditions of Purchase.

21. Based upon the nature of the automotive seating products that Plaintiffs were supplying, some of the Supplies that Plaintiffs ordered from Defendants required further processing (namely, the application of foam laminated to the vinyl) before the Supplies were ready for incorporation into Plaintiffs' products for the OEM.

22. To this end, Plaintiffs issued two types of Orders and Releases for the Supplies: (a) Plaintiffs issued some Orders and Releases for the Supplies directly to Defendants for the unprocessed vinyl Plaintiffs required; and (b) Plaintiffs issued other Orders and Releases for the Supplies indirectly to Defendants through non-party FXI, Inc. ("FXI") for the processed (*i.e.*, foam laminated) vinyl that Plaintiffs required). Plaintiffs will collectively refer to the Orders and Releases that Plaintiffs

issued for their requirements of the unprocessed and processed Supplies as the "Orders" and the "Releases," respectively.

23. Defendants accepted the Orders and Releases for the Supplies.

24. To fulfill the Orders and Releases, Defendants manufactured the Supplies at their manufacturing plant(s) and made repeated and regular shipments either directly to Plaintiffs (for unprocessed vinyl) or indirectly to Plaintiffs through FXI (for processed vinyl).

25. Upon receiving the Supplies from Defendants, Plaintiffs incorporated them into automotive seating products for sale to the OEM.

26. The Award Letter for Supplies, the corresponding Orders and Releases, and the applicable Terms and Conditions of Purchase, all of which govern Plaintiffs' purchase of the Supplies from Defendants, are collectively the "Contract" between Plaintiffs and Defendants.

27. The Contract is a "requirements contract" as that industry term is, and has been, recognized under Michigan law.

**Defendants Breaches and/or Repudiations
of the Parties' Contract – Price Increase #1**

28. On July 1, 2022, Defendants sent Plaintiffs an email with the subject line "Price Increase from Uniroyal Global," stating that Defendants "c[ould] no longer absorb the raw material increases" in their supply chain and, therefore, must demand increased pricing for the Supplies effective August 1, 2022.

7

29. On August 1, 2022, Defendants emailed Plaintiffs a letter informing Plaintiffs that Defendants would stop shipping the Supplies unless Plaintiffs immediately acquiesced to Defendants' unilateral price increase demands for the Supplies. **Exhibit 2**.

30. On August 4, 2022, Plaintiffs responded to Defendants in writing, rejecting Defendants' unilateral demand for increased prices because the parties' Contract prohibited Defendants from demanding unilateral price increases due to "increases in raw material costs." **Exhibit 3**.

31. Defendants were the sole supplier of Plaintiffs' production requirements for the Supplies, Defendants are the sole supplier of Plaintiffs' service requirements for the Supplies, and the Supplies are unique and specifically manufactured for Plaintiffs and their customer, such that they cannot be purchased "off-the-shelf."

32. Resourcing the production of precisely manufactured automotive supplies is a difficult, expensive, and time-consuming process. Under the best of circumstances, Plaintiffs would have to devote significant time and resources (i) to identify alternate suppliers, (ii) to obtain approval from the OEM to make a switch to an alternate supplier, (iii) for the approved alternate supplier to manufacture and/or purchase tooling, and (iv) for the approved alternate supplier to produce supplies in the necessary quantities.

33. Plaintiffs were completely unable to resource the Supplies following Defendants' demand for price increases and threats to stop shipment.

34. Plaintiffs—and the automotive industry in general—operate on a "just-in-time" delivery basis, under which component supplies are periodically delivered only as required by the buyer's current production schedule.

35. To this end and in accordance with the "just-in-time" delivery basis, Plaintiffs did not maintain a significant inventory of the Supplies; instead, they relied on timely shipments of the Supplies from Defendants under the Contract.

36. As a result, and with Defendants threatening to stop shipping the Supplies because Plaintiffs refused to acquiesce to Defendants improper, unilateral price increases, Plaintiffs issued updated Orders, under protest and with a reservation of rights for Plaintiffs to seek reimbursement for all amounts they paid the Defendants under protest.

**Defendants Breaches and/or Repudiations
of the Parties' Contract – Price Increase #2**

37. On April 27, 2023, Defendants sent Plaintiffs another letter stating that "[d]ue to continuing operational cost increases and global supply chain challenges, [Defendants] will issue a price increase effect[ive] May 15, 2023." That letter also said that Defendants would stop shipping Supplies to Plaintiffs unless Plaintiffs immediately acquiesced to Defendants unilateral demands for increased prices of the Supplies. **Exhibit 4**.

9

38. On June 1, 2023, Plaintiffs responded to Defendants in writing, again rejecting Defendants' unilateral demand for increased prices because the parties' Contract prohibited Defendants from demanding unilateral price increases due to "increases in raw material costs, inflation, increases in labor and other production and supply costs, and any other event which impacts the price or availability of materials or supplies." **Exhibit 5**.

39. Following this letter, and in violation of the parties' Contract, Defendants stopped shipping the Supplies.

40. As a result, and with Defendants having stopped shipping the Supplies because Plaintiffs did not acquiesce to Defendants improper, unilateral price increases, Plaintiffs issued updated Orders effective May 15, 2023, under protest and with a reservation of rights for Plaintiffs to seek reimbursement for all amounts they paid the Defendants under protest. **Exhibit 6**.

41. Upon receipt of Plaintiffs updated Orders, which Plaintiffs paid under protest and with a reservation of rights, Defendants resumed their shipments of the Supplies.

42. Since issuing updated Orders, Plaintiffs have attempted to resolve the pricing disputes with Defendants, but the parties were unable to reach a resolution.

43. Defendants' actions are unlawful and constitute breaches of the Contract.

44. If Plaintiffs had not complied with Defendants' improper, unilateral price increases, Defendants would have caused Plaintiffs to run out of Supplies in short order, shutting down Plaintiffs' operations, which would have had the cascading effect of shutting down Plaintiffs' production and, ultimately, the OEM's vehicle production operations.

## ALLEGATIONS IN SUPPORT OF DECLARATORY RELIEF

45. Plaintiffs reassert and reallege the allegations in the foregoing paragraphs as though fully restated herein.

46. This case involves an actual controversy within the Court's jurisdiction.

47. Specifically, Defendants' breaches of their contractual obligations constitute a transgression of a continuing nature, for which there is no adequate remedy at law.

48. Under the Contract, Defendants had no legal right to demand increase prices or to stop shipping the Supplies unless Plaintiffs agreed to pay them more, nor did Plaintiffs have any obligation, contractual or otherwise, to pay Defendants more for the Supplies that Defendants agreed to supply at fixed prices for the production life of the applicable vehicle program(s) and for a certain number of years after the production life of the applicable vehicle program(s) for any service parts needs.

49. Although Plaintiffs' production obligations to the OEM have ended, Plaintiffs still have service life obligations to the OEM.

11

50. Consequently, Defendants still have service life obligations to Plaintiffs under the Contract.

51. Pursuant to Rule 57 of the Federal Rules of Civil Procedure, the Court should enter a declaratory judgment that Defendants must supply the Supplies at the contracted prices for the service life of the applicable vehicle program.

**COUNT I—BREACH AND/OR REPUDIATION OF CONTRACT**

52. Plaintiffs reassert and reallege the allegations in the foregoing paragraphs as though fully restated herein.

53. The Contract—comprised of the Award Letter, the applicable Terms and Conditions of Purchase, the Orders, and the Releases—constitutes a valid, enforceable and binding requirements agreement.

54. Plaintiffs have performed their material obligations to Defendants under the Contract.

55. Defendants have breached and/or repudiated the Contract by (i) unilaterally demanding increased pricing for the Supplies, (ii) threatening to stop shipments and/or (iii) actually suspending shipments of the Supplies when Plaintiffs refused to acquiesce to Defendants' unilateral price increase demands.

56. Defendants' obligations under the Contract are clearly ascertainable and explicit enough to establish breach and/or repudiation of contract.

57. As a result of Defendants' breaches, Plaintiffs have been, and will continue to be, damaged.

58. Indeed, between the date that Plaintiffs acquiesced to Defendants' price increase demands by updating the Orders to reflect payments under protest and the date that Plaintiffs' production obligations to the OEM ended, Plaintiffs paid Defendants more than $270,000 under protest.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs requests the following relief:

a. A judgment for monetary damages, attorney fees, and all other costs arising out of Defendants' breach of the Contract;

b. A declaratory judgment that Defendants must continue supplying the Parts at the contracted prices for the service life of the applicable vehicle program;

c. Any other relief that the Court deems just, equitable or appropriate under the circumstances.

Dated: January 29, 2025                Respectfully submitted,

**HICKEY HAUCK BISHOFF JEFFERS & SEABOLT, PLLC**

*/s/Benjamin I. Shipper*
**Benjamin Shipper (P77558)**
1 Woodward Avenue, Suite 2000
Detroit, MI, 48226
(313) 964-8600
bshipper@hhbjs.com
*Attorneys for Plaintiffs*

13